[Cite as *Vlcek v. Brogee*, 2013-Ohio-4250.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

KEVIN VLCEK                                     :

    Plaintiff-Appellant              :            C.A. CASE NO.    25499

v.                                             :            T.C. NO.    10CV8556

SCOTT BROGEE, et al.                           :            (Civil appeal from
                                                            Common Pleas Court)

    Defendants-Appellees             :

                                               :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the ____27th____ day of ____September____, 2013.

. . . . . . . . . .

KONRAD KUCZAK, Atty. Reg. No. 0011186, 130 W. Second Street, Suite 1010, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

JONATHAN S. ZWEIZIG, Atty. Reg. No. 0069381, 18 East Water Street, Troy, Ohio 45373
    Attorney for Defendants-Appellees, Bradley M. Muhlenkamp, Alric J. Larson, William Demange aka Bill Demange and Tod Monnier aka Todd Monnier

THOMAS H. PYPER, Atty. Reg. No. 0022981, 7601 Paragon Road, Suite 301, Dayton, Ohio 45459
    Attorney for Defendants-Appellees, Kittyhawk Realty, Inc. and Constance Kersey

GREGORY P. GARNER, Atty. Reg. No. 0039111, 4134 Linden Avenue, Suite 102, Dayton,

Ohio 45432

Attorney for Defendants-Appellees, D. Scott Brogee and Keith Koverman

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Kevin Vlcek, the owner of residential rental property, appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment on Vlcek's claims to the company that managed his property, the company's agent, and former tenants who allegedly caused damage to the home.  For the following reasons, the trial court's judgment will be reversed as to Scott Brogee (tenant) and affirmed in part and reversed in part as to Keith Koverman (tenant).  In all other respects, the trial court's judgment will be affirmed.

## I.  Factual and Procedural History

{¶ 2}  The following facts are undisputed.

{¶ 3}  In 1994, Kevin Vlcek purchased a home located at 2404 Harshman Road in Riverside, Ohio.  At that time and until December 2008, Vlcek was on active duty with the military and was frequently stationed in other states.

{¶ 4}  In October 2000, Vlcek entered into a contract with Kittyhawk Realty, Inc. to manage the Harshman Road property.  Although the parties agree that they had a written contract, neither party has located the agreement.  Jane Brame originally managed Vlcek's property for Kittyhawk.  In April 2002, Constance Kersey began running the day-to-day operations of Kittyhawk, and she took over management of the Harshman Road property.  Kersey communicated with Vlcek and the defendant-tenants regarding the property.

{¶ 5}  In May 2005, the property was rented, through Kittyhawk, to a group of young men, Scott Brogee, Alric Larson, Bill Demange, Todd Monnier, and Bradley

Muhlenkamp ("the original tenants"), who all signed a one-year written lease. [1]   In accordance with the May 2005 lease, the original tenants provided a security deposit of $950.   After the one-year written lease expired, the lease renewed as a month-to-month lease.

{¶ 6}     Demange lived at the house for only one month; he moved out in June 2005.   Monnier lived at the property through early April 2007.   Larson lived at the Harshman Road house through August 2007.   Muhlenkamp resided at the property from May 2005 through May 2006 and from Christmas 2006 through early August 2007.   Brogee lived at the property from May 2005 until October 2008, when the property was vacated.

{¶ 7}     Justin Dues moved into the residence and began paying a pro-rata portion of the rent in June or July 2006.   Shortly after Larson and Muhlenkamp moved out of the residence in August 2007, Koverman moved into the house and started paying rent.   In short, by September 2007, Brogee was the only remaining original tenant, and Dues and Koverman had moved into the residence.

{¶ 8}     In late 2007, Vlcek needed to provide a copy of the lease on his Harshman Road property to a mortgage lender as part of his purchase of another home in another state. At that time, Vlcek learned from Kersey that the tenants at the Harshman Road house had a month-to-month lease and that some of the original tenants had moved out.   Kersey notified Brogee in early 2008 that she needed to know the names of the current tenants and that the tenants would need to sign a new lease.

---

[1] Through **Kittyhawk**, the property was previously leased twice.   The Rowe family rented the property beginning in 2001.   After the Rowes moved out, Gina Benge rented the property for a year.   These tenants are not parties to this action.

{¶ 9}    In January 2008, Kersey sent Koverman, Dues and Brogee ("the month-to-month tenants") a new lease, which Kersey had already signed. According to Brogee, he, Koverman, and Dues signed the new lease and mailed it back to Kersey; Kersey disputes that she received it. Vlcek testified in his deposition that he was told by Kersey that the existing tenants would not sign a new lease and that they intended to move out instead.

{¶ 10}   In mid-September 2008, a severe windstorm struck the Dayton area. The windstorm caused some damage to the roof and exterior of Vlcek's home. On or shortly before October 1, 2008, Koverman, Brogee and Dues notified Kersey that they were terminating the lease and moving out. The letter included the final month's rent and included a forwarding address for Brogee, where the security deposit was to be sent. The keys to the house were returned to Kersey on November 3, 2008.

{¶ 11}   After the house was vacated, Kersey checked the residence for damage, and she completed a Security Deposit Disposition Form. Kersey itemized damage totaling $1,225. Kersey sent the form to Brogee and informed him that she was keeping the security deposit and that the tenants owed $275. The original and month-to-month tenants dispute that they caused any damage to the property.

{¶ 12}   On October 29, 2010, Vlcek brought suit against Brogee, Koverman, Dues, Muhlenkamp, Larson, Demange, and Monnier for breach of their lease by failing to maintain Vlcek's personal and real property and for violating R.C. 5321.05(A)(6) by damaging the property. Dues was never served and did not participate in the action. Muhlenkamp, Larson, Demange, and Monnier denied Vlcek's allegations and filed

cross-claims against Brogee, Koverman, and Dues for indemnification and contribution. Brogee and Koverman also denied Vlcek's claims and filed counterclaims against Vlcek claiming that he (Vlcek) wrongfully withheld the security deposit and that his claims were an abuse of process. Brogee and Koverman also brought cross-claims against Muhlenkamp, Larson, Demange, and Monnier for indemnification and contribution.

{¶ 13} In February 2011, Vlcek amended his complaint to include claims against Kersey and Kittyhawk Realty, Inc. for breach of Kersey's duties as property manager and respondeat superior liability, respectively. Kersey and Kittyhawk denied Vlcek's claims and brought cross-claims against their co-defendants. Brogee and Koverman filed an amended answer, asserting six counterclaims against Vlcek, four cross-claims against Kersey and Kittyhawk, and two cross-claims against Muhlenkamp, Larson, Demange, and Monnier. Vlcek subsequently filed a second amended complaint, which included additional claims of negligence and indemnification against Kersey for any liability that might attach to Vlcek arising out of the counterclaims added by Brogee and Koverman in their amended answer.

{¶ 14} The defendants filed motions for summary judgment on Vlcek's claims, and Vlcek moved for partial summary judgment on Brogee and Koverman's counterclaims. We will discuss the motions in more detail below. After considering the parties' motions, the trial court granted all of the parties' motions and certified that its decision was immediately appealable under Civ.R. 54. Vlcek appeals from the trial court's judgment granting summary judgment to Kersey, Kittyhawk, and all of the defendant-tenants on his claims. The trial court granted summary judgment to Vlcek on Brogee and Koverman's counterclaims, but Brogee and Koverman did not appeal that ruling.

## II. Summary Judgment Analysis

{¶ 15}   Vlcek raises three assignments of error, each of which challenges the trial court's decision to grant summary judgment to the defendants.   The assignments of error state:

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING SUMMARY JUDGMENT TO KITTYHAWK REALTY, INC./CONSTANCE KERSEY.

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SUSTAINING THE MOTION OF TENANTS MUHLENKAMP, LARSON, DEMANGE, AND MONNIER.

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SUSTAINING THE MOTION OF TENANTS BROGEE, AND KOVERMAN.

{¶ 16}   Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude adversely to that party.   *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).   The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.   *Dresher v. Burt*,

75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293; Civ.R. 56(C).

{¶ 17} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

### A. Kittyhawk Realty, Inc. and Kersey

{¶ 18} In his first assignment of error, Vlcek challenges the trial court's grant of summary judgment to Kittyhawk Realty and Kersey. He asserts that Kersey's breach of her duties as the property manager prevented him from mitigating some of the damage to the home.

{¶ 19} Vlcek's fourth claim for relief in his second amended complaint alleged that Kersey negligently failed to perform her duties as the property manager by (1) failing to require the original tenants to sign a lease extension or new lease in 2006, (2) failing to adequately inspect the real estate, (3) failing to notify Vlcek of damage caused by the windstorm and/or submit a claim to Vlcek's insurance company for the damage, (4) allowing the month-to-month tenants to remain at the property without a signed lease, (5) failing to conduct a complete inspection of the real estate when Brogee returned the keys to the

property, and (6) failing to itemize and include in the Security Deposit Disposition Form all damage to the real and personal property. Vlcek's fifth claim for relief sought indemnification from Kersey if his claims against all defendant-tenants were barred by the Security Deposit Disposition Form or if Brogee and Koverman prevailed on their counterclaims against him. In his sixth claim for relief, Vlcek alleged that Kittyhawk was liable for the acts of Kersey, its broker/owner.

{¶ 20} Kersey and Kittyhawk filed a motion for summary judgment on Vlcek's claims. They asserted that there was "no causal link between any alleged failure to itemize the damage allegedly caused by the tenants and the harm over which Plaintiff sued." They stated that any damage was caused by the tenants and that Vlcek could recover damages from the tenants under R.C. 5321.12. Citing *Sherwin v. Cabana Club Apartments*, 70 Ohio App.2d 11, 433 N.E.2d 932 (8th Dist.1980), Kersey and Kittyhawk emphasized that Vleck's claims against the tenants for physical damage to the property were "subject only to Plaintiff proving them and are not impeded or impaired by any supposed negligence by Kersey and Kittyhawk in inspecting the property." Finally, Kersey and Kittyhawk argued that there was no evidence that they breached any duty to Vleck by failing to prevent damage to the premises and that there was no evidence that any breach of duty proximately caused the damage. Kersey and Kittyhawk argued that Vlcek was unable to prove what item of damage was allegedly caused by any particular tenant and when that damage occurred. Kersey supported the motion with an affidavit in which she stated that she "exercised reasonable care and skill in the management of the Harshman Road property and appropriately carried out the duties owed to Mr. Vlcek."

{¶ 21} Vlcek opposed the motion, noting that the lease with the original tenants failed to include several terms that he wanted in the lease, that Kersey should have visited the property more, and that Kersey failed to include and account for all of the damage to the property in the Security Deposit Disposition Form. Vlcek provided the affidavit of Anjanette Frye, a residential property manager, who opined that Kersey failed to exercise the care and skill reasonably expected of an experienced property manager in several respects.

{¶ 22} With respect to damages, Vlcek argued that "the reason Mr. Vlcek cannot pinpoint when or which of the tenants caused any particular item of damage is directly because Ms. Kersey did not do what she promised to do; i.e. keep an especially close eye on the Property." Vlcek further asserted that, if he is bound by the Security Deposit Disposition Form prepared by Kersey, he was damaged to the extent that the damage to the property exceeded $275 ($1,225 - $950). Finally, Vlcek noted that there was evidence that the tenants had a dog. He asserted that Kersey's failure to include a pet deposit and pet fee in the lease precluded him from collecting that income.

{¶ 23} In granting Kersey and Kittyhawk's motion for summary judgment, the trial court found that a genuine issue of material fact existed as to whether Kersey and Kittyhawk breached their duties to Vlcek under the management agreement, but that Frye's affidavit failed to establish that the alleged deficiencies were the proximate cause of the damage that Vlcek asserted. The court noted that Vlcek could not say when the asserted damage occurred or which tenant caused the damage. The trial court further stated, "That Kersey understated the damage that exceeded the security deposit does not prevent Vlcek from seeking full restitution from the Tenant Defendants."

{¶ 24} As we stated in *Innovative Technologies Corp. v. Advanced Mgt. Technology, Inc.*, 2d Dist. Montgomery No. 23819, 2011-Ohio-5544:

"Causation" refers to the cause and effect relationship between tortious conduct and a loss that must exist before liability for that loss may be imposed. While difficult to define, "proximate cause" is generally established " 'where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.' " It is also well settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the breach of duty caused the particular damage is not sufficient as a matter of law.

*Id.* at ¶ 31.

{¶ 25} Upon our review of the record, we find that the trial court properly concluded that there was no evidence that Kersey's actions proximately caused the damages Vlcek claimed. Vlcek and Kersey visited and inspected the Harshman Road residence in the fall of 2005. At the time, they did not notice any appreciable damage to the property. Kersey drove by the residence on numerous occasions while the home was rented by the original and month-to-month tenants, but she did not stop at the house until late fall of 2007 or January 2008, when she attempted to have a new lease signed. At that time, Kersey noticed damage to the rear door, but she did not go inside the house. Neither Kersey, Vlcek, nor another representative of Vlcek inspected the house until after the month-to-month tenants moved out.

{¶ 26} Although the tenants claim that they did not damage the property, there is

evidence in the record that there was no damage to the property when the original tenants moved in, but that there was damage when the month-to-month tenants moved out. However, there is no evidence as to when the damage occurred and who caused the damage. Vlcek testified during his deposition that he found a dog collar in the basement and some possible dog toys in the backyard, but there is also no evidence as to when and how long a dog might have been on the property.

{¶ 27} Because the timing of these events is unknown, Vlcek has not demonstrated that there is a genuine issue of material fact as to whether Kersey's actions resulted in any damage to the property. It is possible that all of the damage occurred shortly after Vlcek and Kersey's 2005 inspection of the property and that a future inspection by Kersey would not have prevented any additional damage. It is equally possible that the damage of which Vlcek complains occurred shortly before the month-to-month tenants moved out and that earlier inspections by Kersey would not have revealed damage to the property. Similarly, because it is impossible to tell from the record when and how long a dog may have been on the property, it is speculative whether and to what extent Vlcek may have been entitled to income had a provision regarding pets been part of the lease.

{¶ 28} Vlcek argues that Kersey and Kittyhawk proximately caused him injury in the amount of damage to the property because, as a matter of law, he cannot sue the tenant-defendants for damages over the amount of damages set forth on the Security Deposit Disposition Form. Vlcek asserted at oral argument that, due to Kersey's failure to identify and itemize all damage to the property, the tenant-defendants have a "free pass for everything over $1,225."

{¶ 29} R.C. 5321.05 sets forth the obligations of tenants with respect to rental property. Under that section, if the tenant violates any the statutory obligations (other than R.C. 5321.05(A)(9)), "the landlord may recover any actual damages that result from the violation together with reasonable attorney's fees. This remedy is in addition to any right of the landlord to terminate the rental agreement, to maintain an action for the possession of the premises, or to obtain injunctive relief to compel access * * *." R.C. 5321.05(C)(1). R.C. 5321.12 further provides: "In any action under Chapter 5321. of the Revised Code, any party may recover damages for the breach of contract or the breach of any duty that is imposed by law."

{¶ 30} R.C. 5321.16 concerns security deposits. It provides, in pertinent part:

(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys

fees under division (C) of this section.

(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

{¶ 31} In *Adams v. Davenport*, 2d Dist. Greene No. 2005-CA-108, 2006-Ohio-4646, which was cited by the trial court, the tenant brought suit against his landlord for failure to return his security deposit and unlawfully confiscating certain personal property. We held that a landlord must comply with his statutory duties under R.C. 5321.16(B) when he has actual knowledge of the tenant's forwarding address, and we therefore affirmed the award of statutory damages due to the landlord's failure to comply with R.C. 5321.16(B). We further held: "If the tenant complies with R.C. 5321.16(B) and the landlord fails to comply with R.C. 5321.16(B), the landlord is not precluded from maintaining an action under R.C. 5321.05 and R.C. 5321.12 for damage to property caused by the tenant." *Adams* at ¶ 17, citing *Sherwin*, 70 Ohio App.2d 11, 433 N.E.2d 932 (8th Dist.1980). We thus remanded to the trial court to address the landlord's counterclaim for damages.

{¶ 32} We have found no cases where a landlord has complied with R.C. 5321.16(B) and then brought suit for property damage that was not listed in the itemization. However, *Adams* is instructive in that it recognizes that a landlord does not waive his right to recover for damage to the property by failing to itemize any of the damage. It logically follows that a landlord's itemization of some, but not all, of the damage would not constitute

a waiver the right to recover fully for property damage caused by a tenant.

{¶ 33} Moreover, the Ohio Supreme Court has recognized that the Ohio legislature's intent in enacting R.C. 5321.16(B) and (C) was three-fold:

One, to specifically permit the landlord, upon termination of the rental agreement, to deduct from the rental deposit any unpaid rents and actual damages to the premises occasioned by the tenant. Two, to require prompt refunds of all or part of the security deposit or, in the alternative, to provide an explanation to the tenant why all or any part of the deposit was not returned to him. And, three, to provide a penalty by way of damages and reasonable attorney fees against a noncomplying landlord for the wrongful withholding of any or all of the security deposit.

*Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 28, 476 N.E.2d 1038 (1985). The itemization requirement of R.C. 5321.16(B) ensures that the security deposit is not wrongfully withheld; there is no indication that the itemization was intended as a limitation on the landlord's right under R.C. 5321.05 or R.C. 5321.12 to bring legal action for actual damage to the property.

{¶ 34} Accordingly, we agree with the trial court that any failure by Kersey to fully identify and itemize the damage to the Harshman Road property does not prevent Vlcek from seeking full recovery against the defendant-tenants for the actual property damage. Consequently, Vlcek has not demonstrated that a genuine issue of material fact exists as to whether Kersey's alleged failure to fully identify and itemize the damage proximately caused an injury to him.

{¶ 35} Vlcek's first assignment of error is overruled.

## B. Original Tenants (excluding Brogee)

{¶ 36} In his second assignment of error, Vlcek claims that the trial court erred in granting summary judgment to Muhlenkamp, Larson, Demange and Monnier.

{¶ 37} Vlcek's second amended complaint alleged that all of the original tenants (including Brogee) breached the lease in the following respects: (1) failed to return the property to Vlcek in a clean and sanitary condition, (2) altered and/or redecorated the real estate without permission, (3) placed nails in the walls without permission, (4) failed to use the dehumidifier as required, (5) failed to repair all damages caused by the tenants, their family, and/or guests, (6) allowed the real estate to be occupied by persons who were not on the lease, (7) parked vehicles on the yard and other grassy areas, (8) failed to maintain the yard, (9) failed to keep gutters and down spouts free of debris, (10) failed to dispose of all trash, (11) failed to maintain the appliances, (12) failed to return all lights and smoke detectors in a workable condition, and (13) failed to clean the carpets annually.

{¶ 38} The original defendants (excluding Brogee) sought summary judgment on Vlcek's claims. They asserted that Vlcek, through his agent, Kersey, entered into a new lease with Brogee, Koverman, and Dues in January 2008. As a result of that lease, Vlcek's claims against the original tenants were barred by the two-year statute of limitations for property damage claims. The original defendants further asserted that Vlcek's claims against them failed because Vlcek could not identify which damage was caused by which tenant.

{¶ 39} The trial court rejected Larson, Muhlenkamp, Demange and Monnier's statute of limitations argument. It concluded, however, that Vlcek could not establish that

any of these defendants caused any damage to the property. Larson had admitted to damaging a bedroom ceiling when he fell through the attic floor, but he repaired that damage. The trial court further stated, "Assuming that repair was not satisfactory, Terry Walton, a general contractor engaged by Vlcek to estimate the cost of repairs to the Property, estimated the cost to repair the 'damaged ceiling in the back bedroom' to be $195, which is well within the $950 security deposit withheld by Kersey for damage to the property." As to the duration of the original tenants' contract, the trial court concluded that Larson, Muhlenkamp, Demange and Monnier ceased to be tenants upon Vlcek's entering into a new landlord-tenant relationship with Brogee, Dues, and Koverman.

{¶ 40} Vlcek raises several challenges to the trial court's conclusions. All of Vlcek's arguments rely on his contention that the May 2005 lease remained in effect, albeit on a month-to-month basis, through October 2008, when the last tenants moved out.

{¶ 41} Vlcek's primary argument is that the trial court erred in concluding that Larson, Muhlenkamp, Demange and Monnier ceased to be tenants when Vlcek entered into a new landlord-tenant relationship with Brogee, Koverman, and Dues. He argues that Kersey left a proposed lease with Brogee, Koverman and Dues, that there is a genuine issue of material fact as to whether the month-to-month tenants promptly signed the lease, and that the month-to-month tenants merely counteroffered when they signed the lease because they changed the provision regarding the security deposit.

{¶ 42} Under Ohio law, after a written lease has expired, there are two categories of tenancy: (1) a tenant in sufferance (also called a holdover tenant) and (2) a tenant at will. A tenant whose lease has terminated is a tenant in sufferance; such a party has no agreement as

to continued tenancy and can be treated as a trespasser. *Ruble v. M & L Properties, Ltd.*, 5th Dist. Ashland No. 10-COA-006, 2010-Ohio-6356, ¶ 36. In contrast, a tenancy at will, whether it is created by express contract or by implication of law, involves uncertainty as to the duration of the tenancy and the right of either party to terminate it by proper notice. *Id.* at ¶ 37. "[A] tenancy at will is created when possession of the premises is taken under an invalid lease." *Lewis v. Marcum*, 5th Dist. Licking No. 2003CA7, 2003-Ohio-3861, ¶ 16, citing *Manifold v. Schuster*, 67 Ohio App.3d 251, 586 N.E.2d 1142 (4th Dist.1990); *see Ruble* at ¶ 36; *Reid v. Plainsboro Partners, III*, 10th Dist. Franklin Nos. 09AP-442, 09AP-456, 2010-Ohio-4373, ¶ 33. When rent is paid and accepted, the tenancy at will converts to a periodic tenancy. *Reid* at ¶ 33.

**{¶ 43}** Under the May 2005 lease, the original tenants were required to provide 30 days' notice of their intent to vacate. If no notice were given, "the current lease will automatically renew itself on the first of each month and continue as a month to month lease, with all terms of the lease remaining in full force and effect." (Section E, ¶ 28.) The tenants were also responsible for notifying Kittyhawk of any changes in the "number of occupants, classification or status." (Section J.)

**{¶ 44}** By its terms, the May 2005 written lease expired on May 31, 2006, and it was renewed on a month-to-month basis. By late 2007, all of the original tenants except Brogee had moved out of the residence. Around that time, Kersey learned that Brogee, Koverman, and Dues were residing at the Harshman Road property and she prepared a written month-to-month lease naming those residents as tenants. Although the parties have presented a copy of a proposed written month-to-month lease prepared and signed by Kersey

on January 23, 2008, it is disputed whether the month-to-month tenants signed and returned the lease to Kersey.

{¶ 45} Regardless of whether the proposed 2008 month-to-month lease was properly executed, Kersey and Vlcek received and accepted rent payments from the month-to-month tenants from January 2008 through October 2008. Kersey knew that Larson, Muhlenkamp, Demange and Monnier had moved out and that Brogee, Koverman, and Dues resided there. Even assuming the absence of an enforceable, written contract with Brogee, Koverman, and Dues, Vlcek entered into a month-to-month rental agreement with the month-to-month tenants based on his acceptance of their monthly rent payments. Accordingly, the trial court did not err in concluding that the four original tenants who had vacated the premises were no longer tenants in 2008.

{¶ 46} Vlcek further argues that he did not need to establish which tenants caused what damage in order for Larson, Muhlenkamp, Demange and Monnier to be liable. He states that they waived any defense that the damage was caused by others by failing to submit the move-in checklist to Kersey. Although the original tenants did not complete the move-in checklist that Kersey provided, Kersey testified during her deposition that the original tenants "did a video inspection of the property and videoed it on a disk. * * * I think it had sound to it. I don't know. I never played it." Vlcek also stated in his affidavit that "one of the original tenants took some photographs of the Property shortly after the original tenants took possession and sent a copy of those photographs to Kittyhawk." Thus, Vlcek has acknowledged that the original tenants conducted a move-in inspection of the property and provided it to Kersey. Vlcek cannot establish that the original tenants waived a defense

that the damage was caused by others by failing to conduct a move-in inspection.

**{¶ 47}** Finally, Vlcek argues that Larson, Muhlenkamp, Demange and Monnier agreed to be jointly and severally liable for damages in the May 2005 lease and, as a result, they are responsible for any damage done to the property.

> In general, a landlord may recover damages from a tenant for violations of R.C. 5321.05, which provides a lengthy list of obligations tenants owe to a landlord concerning maintenance of the leased premises. In particular, R.C. 5321.05(A) provides in relevant part that a tenant shall refrain from " * * * intentionally or negligently destroying, defacing, damaging or removing any fixture, appliance, or other part of the premises; * * *." The landlord, however, bears the burden of submitting sufficient evidence linking any alleged damage to a failure on the part of a tenant to fulfill those obligations.

(Citations omitted.) *Zilka v. Asberry*, 6th Dist. Huron No. H-04-022, 2005-Ohio-1881, ¶ 9.

**{¶ 48}** Even assuming that Larson, Muhlenkamp, Demange and Monnier agreed to be jointly and severally liable, Vlcek has presented no evidence establishing that any of the damage was caused during their tenancy. Accordingly, the trial court properly granted summary judgment to Larson, Muhlenkamp, Demange and Monnier.

**{¶ 49}** The second assignment of error is overruled.

### C. Month-to-Month Tenants (excluding Dues)

**{¶ 50}** In his third assignment of error, Vlcek claims that the trial court erred in granting summary judgment to Brogee and Koverman.

**{¶ 51}** Vlcek's second amended complaint contained two counts against the

month-to-month tenants. The second cause of action alleged that they "caused or allowed the Real Estate to be damaged." The third cause of action alleged, in the alternative, that they breached the 2008 lease agreement in 13 respects and failed to fulfill their obligations under R.C. 5321.05(A)(6).

**{¶ 52}** The trial court sustained Brogee and Koverman's motion for summary judgment for the same reasons as the original tenants' motion. The trial court stated that "Vlcek has admitted that he is unable to prove what tenant caused damage to his Property or when any particular damage took place." The court noted that Koverman admitted to punching a hole in a wall that was not repaired and that the evidence established that Dues damaged a door. However, Kersey's Security Deposit Disposition Form charged $400 to repair and paint walls and $200 to replace a bedroom door. The court stated that these amounts, plus the $195 chargeable to Larson, were "well within the $950 security deposit. kept by Kersey when Brogee and Koverman vacated the premises." In parenthesis, the trial court further noted:

> The Court is aware that Terry Walton estimated $2,600 to "Repair and replace damaged drywall" and $225 to "replace (one) broken bedroom door."
> However, the Court concludes that the appropriate measure of damages is that of Kersey, who managed the property as Vlcek's agent and assessed the damage upon Brogee's and Koverman's departure. Furthermore, Walton's estimate to "repair and replace damaged drywall" referred to the "Whole House."

**{¶ 53}** While we might not have used the same words as the trial court, we agree

that Kersey's repair estimate in the Security Deposit Disposition Form was the only evidence of the cost to repair the damage Koverman caused. Walton's estimate to repair and replace damaged drywall was not limited to the hole that Koverman made, and Vlcek has not presented any evidence of the cost to repair the specific hole that Koverman admitted to making. Kersey accounted for Koverman's damage, and it fell within the security deposit.

{¶ 54} As for Koverman's liability for alleged property damage other than the hole in the wall, Vlcek's claims against Koverman fail for the same reasons as Vlcek's claims against Larson, Muhlenkamp, Demange and Monnier. Vlcek cannot identify which tenant cause what damage at what time. Accordingly, Vlcek cannot establish that any additional property damage was caused by Koverman. Accordingly, summary judgment was properly entered in favor of Koverman on Count Two of Vlcek's second amended complaint.

{¶ 55} We reach a different conclusion with respect to Vlcek's property damage claim against Brogee. It is undisputed that Brogee resided at the residence at all relevant times and that he signed the original May 2005 lease. Brogee stated in his affidavit that he received a written month-to-month lease from Kersey, that he, Koverman, and Dues signed it, that he made a copy of the lease for himself, and that he mailed the original signed copy to Kersey. (Brogee Aff. ¶ 85-88.) Brogee stated that the new lease provided the same terms and conditions as the original 2005 lease, except that only the month-to-month tenants were on the lease. (Brogee Aff. ¶ 83.) Accordingly, Brogee apparently concedes that he was subject to various obligations under the 2008 month-to-month lease and R.C. 5321.05.

{¶ 56} Both the 2005 and 2008 leases contained an "acknowledgments" provision immediately above the signature lines. That provision states:

> I/We the undersigned Tenants have read, understand and accept all the terms and conditions of this lease agreement and hereby agree to abide by said terms and conditions during the tem [sic] of this lease and/or any extensions thereof. Also, if I/We sign this agreement with another person/persons, I will be held accountable individually and collectively.

The plain meaning of this provision is that each tenant is jointly and severally liable for the tenants' obligations under the lease. Thus, under the lease, if one of Brogee's co-tenants causes damage to the residence, Brogee is jointly and severally liable for that damage. Such a term is not contrary to Ohio's Landlords and Tenants Act, R.C. 5321.01 et seq. *E.g., Wayne Mut. Ins. v. Parks*, 9th Dist. Summit No. 20945, 2002-Ohio-3990.

{¶ 57} There is no evidence that Brogee himself damaged the residence, and all of the defendant-tenants dispute that any damage, in fact, occurred. However, Vlcek presented evidence that physical damage was done to his property. Vlcek stated in his affidavit that the hot tub was not working and a pool ball had gotten lodged in the sump pump causing the motor to burn out. Vlcek stated that there was damage to ceiling fans, several doors, and walls. Vlcek provided an affidavit from his sister, Rosemary Bern, attesting that the interior of the home was "absolutely filthy and damaged." He also provided an estimate from Terry Walton, a general contractor, itemizing approximately $25,000 of repairs. Based on the record, we conclude that genuine issues of material fact exist as to the extent of damage to the property and that, due to the acknowledgment provisions in the leases and the fact that Brogee was a tenant at all relevant times, Vlcek is not precluded from asserting a claim for property damage against Brogee.

**{¶ 58}** Vlcek's third claim for relief alleged, in part, that Brogee and Koverman breached terms of their month-to-month lease in ways that did not involve property damage. For example, Vlcek alleged that they were both obligated to leave the house in a clean and sanitary condition, maintain the yard, pick up and dispose of all trash, and use the dehumidifier.

**{¶ 59}** Vlcek presented evidence that could support a conclusion that Brogee and Koverman breached the terms of their lease in these respects. Vlcek and Bern both stated in affidavits that the house was not clean and sanitary after the house was vacated. Bern described the house as "absolutely filthy." Vlcek further stated that "[t]he dehumidifier was unplugged [and] shoved in the corner of the basement. There was much dust on it. The only use that I saw for it was being used for was to hold the cups for a keg party." As for the yard, Vlcek observed "garbage everywhere, broken beer bottles, bottle caps. I mean I'm still finding that stuff." Vlcek stated that he incurred cleaning costs. Although Vlcek cannot establish that Koverman caused physical damage to the property (other than the admitted hole in the drywall), there is a genuine issue of material fact as to whether Koverman and Brogee failed to comply with these conditions of the lease, resulting in extensive cleaning costs to Vlcek.

**{¶ 60}** Accordingly, the third assignment of error is sustained in part and overruled in part.

### III. Conclusion

**{¶ 61}** The facts and legal issues presented to the trial court and to this court do not lend themselves to terse or cursory resolution. Their disposition is not advanced by ad

hominem references in one of the briefs to the parties or their motivations or to characterizations of another's position as "specious" or "absurd." Such invective is undeserving of the extremely competent and experienced counsel involved in this litigation.

{¶ 62} The trial court's judgment will be affirmed in part and reversed in part. Specifically, the portion of the trial court's judgment that granted summary judgment to Scott Brogee will be reversed, and the portion of the trial court's judgment that granted summary judgment to Keith Koverman will be affirmed in part and reversed in part. In all other respects, the trial court's judgment will be affirmed. The matter will be remanded to the trial court for further proceedings.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Konrad Kuczak
Jonathan S. Zweizig
Thomas H. Pyper
Gregory P. Garner
Hon. Michael W. Krumholtz