[Cite as *Heard v. Daytonview Commons Homes*, 2018-Ohio-606.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JAMES A. HEARD | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27706 |
| | : | |
| v. | : | Trial Court Case No. 16-CV-5890 |
| | : | |
| DAYTONVIEW COMMONS HOMES | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . . .

JAMES A. HEARD, 100 Audubon Park, Dayton, Ohio 45402
        Plaintiff-Appellant, Pro Se

WILLIAM H. KOTAR III, Atty. Reg. No. 0073462, 7550 Lucerne Drive, Suite 408,
Middleburg Heights, Ohio 44130
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1}  James A. Heard appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Dayton View Commons Homes and Oberer Management Services (collectively "Dayton View") on Heard's claim for personal injury.  For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2}  Heard's pro se complaint was filed on November 17, 2016.  The complaint had several attachments and alleged that, on November 24, 2014, he had fallen at the threshold of his apartment because of water that had seeped under the exterior door, a problem about which he had previously complained to management.  He stated that he hit his back, neck, and head on the ground, that the fall caused him to have surgery on his "cervical," and that treatment was ongoing.  He sought $5 million in compensatory and punitive damages.  No specific medical records or expert opinions were attached to the complaint.[1]

{¶ 3}  Dayton View filed an answer denying Heard's allegations and raising affirmative defenses.  It also filed a notice disclosing its expert witness, a notice to take a medical examination (of Heard), and a notice to take Heard's deposition.

{¶ 4}  On May 25, 2017, Dayton View filed a motion for summary judgment.  The motion stated that Heard alleged that he had neck surgery as a result of his fall, but that his medical records indicated that his physicians had been recommending neck surgery

---

[1] A letter from United Healthcare to Heard was attached to the complaint, along with other non-medical documents. The letter referenced "treatment" on June 2, 2016 (more than 18 months after Heard's fall), but it contained no information about the nature of the treatment or the specific provider; rather, it sought information about the cause of Heard's "accident or injury" which led him to seek that treatment.

for a couple of years prior to the fall. Dayton View's motion also asserted that Heard presented "no expert testimony to establish that the neck surgery was in any way proximately related to the alleged slip and fall." The motion relied on Heard's deposition testimony.

{¶ 5} Heard did not file a response to the motion for summary judgment. On July 28, 2017, the trial court granted Dayton View's motion.

{¶ 6} Heard filed a notice of appeal and a pro se brief. The brief does not set forth assignments of error or otherwise comply with App.R. 16(A), but it does demonstrate that Heard disagrees with the trial court's award of summary judgment.

### *Summary Judgment Standard*

{¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 8} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits

or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* The non-moving party has the burden "to produce evidence on any issue for which that party bears the burden of production at trial" and may not rest upon unsworn or unsupported allegations in the pleadings. *Parker v. Bank One, N.A.*, 2d Dist. Montgomery No. 18573, 2001 WL 303284, * 3, citing *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993), *Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 111, 570 N.E.2d 1095 (1991), and others. Throughout, the evidence must be construed in favor of the nonmoving party. *Drescher* at 293.

{¶ 9} In its motion for summary judgment, Dayton View misstated the standard for summary judgment. Citing *Wing*, it argued that the party moving for summary judgment "is not required to present evidence negating elements of the Plaintiff's claim. Rather, the party opposing summary judgment has the burden of producing specific evidence to establish each element of each claim for which he bears the burden of production at trial." Actually, it is only once the moving party had met its burden of pointing to evidentiary material that shows there is no genuine issue of material fact that the non-moving party has to do anything. Regardless, the trial court utilized the correct standard, i.e., that the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial.

{¶ 10} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine

whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### Proximate Causation

{¶ 11}   In order to prevail on a negligence claim, "one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981); *Long v. Speedway, L.L.C.,* 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, ¶ 7.   In Heard's case, the trial court found that there was no genuine issue of material fact as to proximate causation and did not specifically address the other elements.

{¶ 12}   Proximate cause is generally established " 'where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.' "   *Vlcek v. Brogee*, 2d Dist. Montgomery No. 25499, 2013-Ohio-4250, ¶ 24, citing *Innovative Technologies Corp. v. Advanced Mgt. Technology, Inc.,* 2d Dist. Montgomery No. 23819, 2011-Ohio-5544, ¶ 31.   The issue of proximate cause is not open to speculation; as a matter of law, conjecture as to whether the breach of duty caused the particular damage is not sufficient.   *Id.*

{¶ 13}   " 'Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion.' " *Lane v. Bur. of Workers' Comp.*, 2d Dist. Montgomery No. 24618, 2012-Ohio-209, ¶ 60, citing *Wright v. Columbus*, 10th Dist. Franklin No. 05AP-432, 2006-Ohio-759, ¶ 6.   Soft-tissue injuries like neck and back strains and sprains require expert testimony to establish

a causal connection, because they are injuries that are "internal and elusive, and are not sufficiently observable, understandable, and comprehensible" to be matters of common knowledge. *Id.*, citing *Wright* at ¶ 19.

***Analysis***

{¶ 14} In support of its motion for summary judgment, Dayton View relied on Heard's deposition testimony. In his deposition, Heard, age 59, testified that he had experienced back pain for many years prior to his fall, had been on disability since 2005 for back pain, and had been treated for pain management for "a very long time" with injections and physical therapy. Heard was advised by his doctor in 2012 to get a spinal cord stimulator implant, but he refused.

{¶ 15} Heard further testified that, in 2013, he began experiencing neck pain and tingling in his left arm following a motor vehicle accident, and he continued to have lower back pain; he again refused to consider a spinal cord stimulator. His medical records, about which he was questioned during the deposition, indicated that his chief complaint at that time was neck pain. Heard was also advised by his doctor that he should have surgery to decompress his spine to prevent further damage, symptoms, or loss of function in his limbs, including possible paralysis. Although Heard refused to have the surgery at that time, he acknowledged that he had been informed that surgery might be needed in the future if his condition deteriorated. Heard also acknowledged that his discussion with his doctor in 2013 included discussion of whether surgery on his back and neck could be done at the same time.

{¶ 16} In January 2014, several months before Heard's fall at his apartment, he had an MRI, which his doctors compared with an MRI he had had in 2012. According to

Heard, the doctor told him that his spine "was compressed worse" than it had been previously.

{¶ 17} Heard testified that, when he fell, his neighbor immediately called for an ambulance and he was taken to a hospital; he got a "pain shot" and x-rays were taken, but the nurse or technician "didn't see anything in the X rays." He was released the same day, and he "hadn't followed up with anybody" for medical care. However, Heard's neck and shoulder "got to hurting really, really bad where [he] was starting to lose mobility," so he eventually called his "orthopedic," who again recommended that he have surgery for "severity of the cervical." The time that had elapsed is unclear, but Heard's testimony about his medical records indicates that he saw a doctor on January 16, 2015, at which time he reported numbness and tingling in his hand. Another MRI was scheduled for June 2015. Heard had surgery on his neck in July 2015.

{¶ 18} When Heard was asked during his deposition how he had gotten the idea that his fall created the need for surgery, he answered, "Because I was having no problems with my neck until after the fall." But he acknowledged that he had been told in 2013 that he might need an operation on his neck in the future; Heard told the doctor at that time that surgery "wasn't necessary" because he "wasn't having any complications." Heard testified in his deposition that his pain had worsened after his fall, but he also testified that such a deterioration of his condition had been anticipated by and discussed with his physicians prior to the fall. Heard could not remember whether anyone had ever told him that the need for surgery was related to his November 2014 fall. Heard stated that he had not hired an expert to evaluate this issue, because he could not afford one.

{¶ 19} Based on Heard's deposition testimony, the trial court found that he had experienced neck and back pain prior to his fall. He had discussed with his doctor the option of surgery at that time to decompress his spinal cord, the possible need to have surgery in the future, and the potential for further deterioration of his condition. The trial court found that Dayton View had presented evidence that Heard had neck issues prior to the fall. Heard did not present an expert opinion as to the existence of a different injury after the fall, the aggravation of a pre-existing condition, or the reason for the July 2015 surgery. The trial court concluded that his own lay opinion could not create a genuine issue of material fact that would refute the medical evidence that there were other causes of Heard's neck pain, as presented by Dayton View through Heard's testimony about his medical records. Thus, the court concluded that, even construing the evidence in the light most favorable to Heard, Heard had not met his burden of showing that there was a genuine issue of material fact on proximate causation, i.e., that his fall had created a neck injury and/or the need for surgery on Heard's neck.

{¶ 20} This case is closely analogous to *Jacobs v. Gateway Property Mgt.*, 8th Dist. Cuyahoga No. 84973, 2005-Ohio-1983, where a tenant fell in his apartment after water leaked from a pipe onto the floor. The tenant alleged that he suffered back injuries as a result of his fall, but he did not produce medical records documenting treatment for the fall or an expert opinion regarding the cause of his injury. His medical records did, however, document a "prior existing back injury." In affirming the trial court's decision granting summary judgment to the landlord, the Eighth District observed that "expert testimony and * * * treatment records for the instant slip and fall [were] especially crucial" because of the pre-existing injury and that, in the absence of such evidence, the tenant

"did not meet his burden of establishing a direct and proximate causal relationship between the claimed injury and the slip and fall." *Id.* at ¶ 13. (The court also found that the water on the floor was an open and obvious hazard about which the tenant was "fully aware," such that he failed to establish that the landlord had a duty to protect him from the hazard. *Id.* at ¶ 15.)

{¶ 21} The trial court did not err in granting summary judgment in favor of Dayton View. Dayton View pointed to evidentiary material – Heard's medical records – that tended to prove that the fall was not the cause of the injury and surgery. Although Heard stated at one point that he "was having no problems with his neck until after the fall," his specific testimony about his medical records and history contradicted this statement; his deposition testimony about his medical records clearly indicated that he suffered from neck pain before the fall. No expert testimony or medical records linked the subsequent treatment to the fall, as opposed to his pre-existing neck problems. Under the circumstances presented in this case, where pre-existing neck pain and a likely need for surgery were documented in Heard's medical records, he was required to provide expert medical testimony or other evidentiary material to support his assertion that the fall was the cause of some or all of his neck pain, and thus to create a genuine issue of material fact. In the absence of such evidence, summary judgment was appropriate.

{¶ 22} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

James A. Heard
William H. Kotar, III
Hon. Barbara P. Gorman