[Cite as *Ohio Dept. of Medicaid v. French*, 2020-Ohio-2744.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| OHIO DEPARTMENT OF MEDICAID | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-217 |
| | : | |
| NINA FRENCH, EXECUTOR OF THE ESTATE OF HARRY L. WARD | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of May, 2020.

. . . . . . . . . .

STANLEY R. EVANS, Atty. Reg. No. 0011933 and JUSTIN M. LOPEZ, Atty. Reg. No. 0089759, 100 South Main Avenue, Courtview Center, Suite 102, P.O. Box 499, Sidney, Ohio 45365
      Attorneys for Plaintiff-Appellee

CRAIG A. DYNES, Atty. Reg. No. 0000724, 2840 Alt. S.R. 49 North, Suite B, P.O. Box 250, Arcanum, Ohio 45304
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Nina French, the daughter of Harry L. and Lessel J. Ward and the executor of the Harry's estate, appeals in her capacity as executor from a judgment which granted the motion for summary judgment of the Ohio Department of Medicaid ("ODM").   The trial court held that, pursuant to R.C. 5162.21(A)(1)(b), ODM was entitled to recover one-half of a refund paid by the Brethren Retirement Community ("BRC") to Harry's estate, because Lessel's ownership interest in her half of the BRC refund endured post-mortem and was subject to recovery for Medicaid medical assistance benefits previously paid on Lessel's behalf.   We affirm the trial court's judgment.

{¶ 2} ODM filed a complaint against French as executor of Harry's estate on May 4, 2017.   According to the complaint, on March 21, 2001, Lessel and Harry entered into a reservation agreement with BRC to reserve a cottage unit at Chestnut Village.   On August 13, 2001, Lessel and Harry entered into a modified resident agreement ("resident agreement"), pursuant to which they paid a unit reservation fee of $2,000 for Chestnut Village, as well as a deposit of $108,400 ("original deposit").   The complaint alleged that Lessel, a Medicaid recipient, died on July 7, 2015, and at the time of her death, Lessel was married to Harry.   According to the complaint, Lessel received Medicaid benefits beginning February 1, 2011, until her death, in the amount of $269,929.82.   The complaint alleged that Harry died on March 14, 2016, and that the beneficiaries of his will were French and another daughter, Martha Jo Dale.

{¶ 3} The complaint alleged that on January 26, 2016, ODM presented a claim to Harry, as Lessel's surviving spouse and the person responsible for her probate estate, in the amount of the Medicaid medical assistance benefits she received, namely $269,929.82; ODM also filed a claim in Lessel's probate estate.   The complaint alleged

that, pursuant to the Medicaid Estate Recovery Program as set forth in R.C. 5162.21 and Ohio Adm.Code 5160:1-2-07, ODM was precluded from recovering on such a claim against a deceased Medicaid recipient if the deceased recipient left a surviving spouse.

{¶ 4} According to the complaint, on July 5, 2016, French filed an inventory and appraisal with a schedule of assets in Harry's probate estate, indicating a total value of $51,280; this amount included a refund from BRC in the amount of $48,780 from the original deposit. ODM filed a claim in Harry's probate estate on January 25, 2017, which was rejected by counsel for French on April 7, 2017.

{¶ 5} In its first claim for relief, ODM asserted that it was entitled to recover from Harry's recoverable estate, which included but was not limited to Harry's probate estate, Lessel's interest in any asset included in Harry's recoverable estate, whether a probate or non-probate asset, which included but was not limited to: "(a) $988.21 that [Harry] received from [Lessel's] Probate Estate; and (b) [Lessel's] one-half interest in the unused portion of the Original Deposit, at [Lessel's] time of death, that amount being at least [$24,390]," which was one-half the amount of the refund. In its second and third claims for relief, ODM alleged unjust enrichment and asserted that no provision in Ohio law allowed French to reject ODM's claim in Harry's probate estate, which was presented pursuant to R.C. 2117.061.

{¶ 6} On June 23, 2017, French filed an answer and counterclaim. In her counterclaim, she asserted that the estate's attorney had negotiated a "settlement of the claim" for Lessel in the amount of $408.21, that that amount had been tendered to the Ohio Treasurer, that ODM had "breached its contractual agreement," and the estate was entitled to enforce the settlement agreement with ODM.

{¶ 7} ODM replied to the counterclaim on July 21, 2017. ODM asserted that "any settlement to which [ODM] purportedly agreed was based on [French's] misrepresentation of the pertinent facts with respect to the amount of the assets available for recovery, specifically the refund/reimbursement that [BRC] paid to [French]" as Harry's executor.

{¶ 8} On September 29, 2017, the court issued a briefing schedule, ordered the parties to submit a joint stipulation of facts, and set dates for any motions for summary judgment to be filed. On April 5, 2018, the trial court filed a notice of intent to dismiss, noting that ODM had failed to comply with the deadlines set forth in its prior order. On April 13, 2018, a joint stipulation of facts was filed and the court issued an agreed amended briefing schedule, again noting that the "matter will be submitted for decision."

{¶ 9} ODM filed its motion for summary judgment on June 1, 2018. The motion asserted that ODM was entitled to recover the following from Harry's probate estate: 1) the amount distributed to Harry from Lessel's probate estate, namely $408.21; and 2) an amount representing Lessel's one-half interest in the remaining balance of the original deposit when the resident agreement terminated upon Harry's death, namely $24,390, which was refunded by BRC. ODM asserted that the unused portion of the $108,400 deposit was comparable to a joint and survivorship deposit bank account, a survivorship tenancy in real estate, and transfer-on-death designations and payable-on-death accounts. ODM argued that it would be unjust for Harry's beneficiaries to retain benefits that rightfully belonged to ODM's under the estate recovery program.

{¶ 10} ODM attached the following items to its motion for summary judgment: the parties' joint stipulation of facts; a "Medicaid Information Technology System Estate

Recovery – Recipient Detail Report," reflecting a total amount paid of $268,385.68 for Lessel; a notice of an interim claim against Lessel's estate; the reservation agreement with BRC; the resident agreement; the inventory and appraisal for Harry's estate, including a schedule of assets which reflected BRC "reimbursement" in the amount of $48,780; an "Occupancy Fee Refund Schedule" from BRC for Harry and Lessel; and an affidavit of Carl C. Eubank, BRC's Chief Financial Officer.

{¶ 11} Eubank's affidavit stated in part as follows:

24.   Most residents, including a surviving spouse, eventually require advanced care (nursing home or skilled nursing care) and, therefore, any remaining Original Deposit balance is transferred to pay for a resident's advanced care rather than BRC issue a refund of the original deposit to a resident;

25.   Typically, most Original Deposit refunds are applied to a resident's next continuum of care, and, more often than not, no Original Deposit refund is available to a resident at the resident's time of death;

26.   An amortization schedule setting forth the Wards' Original Deposit refund was provided upon request * * *.   A true and accurate copy of the Wards' Original Deposit Refund Schedule, prepared May, 2003, is attached as Exhibit C;

* * *

28.   The Original Deposit Refund Schedule sets forth the refund amount if the Wards had terminated the Resident Agreement.   At month 55, the Woods owned a fully paid Resident Agreement.   If, at any time after

February 1, 2006, the Wards terminated the Resident Agreement, under Section 5.3 of the Resident Agreement, the Wards would have been jointly entitled to an Original Deposit Refund in the amount of $48,780.00.

* * *

30.    Pursuant to the terms and conditions of the Resident Agreement, upon the death of * * * Harry * * *, BRC paid and delivered the Wards' Original Deposit Refund in the amount of $48,780.00 to the Executor of the Estate of Harry * * *.

{¶ 12}  French responded to ODM's motion for summary judgment and filed her own motion for summary judgment on July 6, 2018.   French asserted that ODM was not entitled to the BRC refund.   She asserted that Lessel, at the time of her death, "had no interest in the refund."   French also argued that whether the BCR refund was property from which ODM was entitled to make recovery as provided in R.C. 5162.21(A)(1) was a question of fact to be decided by a jury.   French attached to her motion the affidavit of Craig A. Dynes, counsel for the estate.   Dynes averred that the issue of whether the refund was an asset in which Lessel held legal title or an interest at the time of her death was a question of fact.   According to Dynes, this position was supported by an email Dynes sent to Stan Evans, Stacy Knasel and Kristina M. Morris on November 29, 2017; the letter was attached as Exhibit A and reflected Dynes's "fine tuning" of the parties' stipulations.

{¶ 13} French's motion also attached an affidavit by BRC CEO Eubank. Regarding paragraph 28 of his affidavit in support of ODM's motion for summary judgment, Eubank averred that the "use of the word 'jointly' therein mean[t] that if both

Harry * * * and Lessel * * * were alive and the Resident Agreement was terminated, the refund would have been made payable to the both of them. The use of the word 'jointly' has no other significance to the Affiant, legal or otherwise." Eubank further stated that, upon Harry's death, Harry's estate was entitled to the BRC refund in the amount of $48,780 and that, "during the period of time that either [Harry or Lessel] were residing in the residence, neither Harry nor Lessel would be entitled to any BRC refund, nor would they have access to the Occupancy Fee."

{¶ 14} On July 23, 2018, ODM moved to strike Dynes's affidavit because it was "not based on personal knowledge," addressed matters of law that were "purely within the province of the Court," addressed matters that were clearly inadmissible as settlement negotiations, and "improperly position[ed] [French's] counsel, i.e., the affiant, as a witness in this matter."

{¶ 15} On July 27, 2018, French responded to the motion to strike, arguing Dynes "wished to clarify" that it was French's position that the issue of whether the BRC refund was property subject to recovery by ODM pursuant to R.C. 5162.21(A)(1) was a question of fact to be determined by a jury.

{¶ 16} On July 30, 2018, the trial court struck Dynes's affidavit. The decision stated:

> The Court finds that the affidavit of counsel for the Defendant purports to establish a genuine issue of material fact in order to defeat a request for summary judgment. The Court finds such affidavit to be outside the consideration of the Court for the following reasons: (1) it is counsel's opinion about an issue ultimately for the Court to decide; and (2) counsel is

not competent to insert himself as a witness in this matter.

{¶ 17} On August 3, 2018, ODM replied to French's response to its motion for summary judgment and responded to French's motion for summary judgment. On September 7, 2018, French replied to ODM's response to her motion for summary judgment.

{¶ 18} On January 18, 2019, the trial court entered judgment in favor of ODM, concluding that there was "no genuine issue of material fact outstanding in this case." The court noted that the parties agreed that Lessel received Medicaid benefits, that a claim was made against her estate upon her death, and that ODM did not proceed against the claim during Harry's life. The court concluded that the "only 'fact'" that French disputed was the determination of whether the BRC refund was property that fell within R.C. 5162.21(A)(1), and that "the nature of the *refund* [was] a matter of law," not of fact.

{¶ 19} The court noted that the parties agreed that BRC paid $48,780 to Harry Ward's estate. The court found that the resident agreement granted "a license to persons to occupy a residential facility owned by [BRC]." This license required receipt of a lump sum payment from the Wards, and then granted them occupancy provided additional monthly payments were made. The court further found that, "during the life of an occupant[,] termination of the license can occur at the behest of both [BRC] and the resident. * * * Upon termination, the resident possesses various rights in the original lump sum payment."

{¶ 20} The court noted that the resident agreement contained "a refund schedule following termination." The court concluded that Lessel Ward had an interest in and access to a refund at the time she sought Medicaid benefits. Relying on the resident

agreement and *Phillips v. McCarthy*, 12 Dist. Preble No. CA2015-08-017, 2016-Ohio-2994, the court concluded that Lessel "possessed a post mortem recovery for her half of the joint right to return deposit upon the termination of her joint lease with [BRC]" and that ODM was entitled to recover one half of the $48,700 refund payment from the BRC, which was paid to the estate of Harry Ward. "One-half of the refund payment is an 'asset' as defined by R.C. 5162.21 and subject to recovery by [ODM] * * *."

{¶ 21} On February 22, 2019, ODM filed a motion for voluntary partial dismissal pursuant to Civ.R. 41(A)(2) of its remaining claim for $988.21 in probate assets held by Harry's estate that were received from Lessel's probate estate. The motion stated that ODM sought dismissal "for judicial economy purposes as dismissal would leave [French's] Counterclaim as the only remaining claim before this Court." The court granted the motion.

{¶ 22} On March 4, 2019, French filed a motion for revision, clarification, and reconsideration. The motion requested that the court clarify whether it had found the BRC refund payment to be an "asset" under R.C. 5162.21(A)(1)(a) or R.C. 5162.21(A)(1)(b). French asked, "if a refund payment to Lessel Ward would be an asset to be administered pursuant to Title XXI of the Ohio Revised Code, then would that refund, as an asset of the probate estate, be governed by the priority of claims as set forth in [R.C.] 2117.25 and would the subject refund be a priority claim pursuant to [R.C.] 2106.13[?]"

{¶ 23} ODM responded to French's motion on March 29, 2019, arguing that it should be overruled for procedural and substantive reasons. ODM emphasized that French stipulated that the only asset listed and administered in Lessel's estate was a

checking account at Second National Bank that Lessel owned at the time of her death with a value of $988.21. ODM further asserted that French stipulated that, after payment of certain costs and expenses, the amount distributed from Lessel's estate to Harry's estate was $408.21, although Harry's estate had a total value of $51,280, of which $48,780 represented the BRC refund.

{¶ 24} ODM further asserted that French argued in her motion for summary judgment that the BRC refund was not part of Lessel's estate to be administered under Title XXI of the Revised Code, and that she acknowledged in her motion for summary judgment and the joint stipulation of facts that the BRC refund was a non-probate asset for Lessel. ODM asserted that French's motion was positing a hypothetical question based on hypothetical facts that she had stipulated did exist. ODM asserted that the nature and attributes of the BRC refund further indicated that it was a non-probate asset.

{¶ 25} On April 17, 2019, the court issued an entry in response to French's motion for revision, clarification, and reconsideration. It stated in part:

It is well understood that motions for reconsideration are a nullity in the State of Ohio as to final judgments and permitted under rule for temporary or interlocutory orders. The Court finds the order of January 19, 2019 is a final order and therefore any motion for reconsideration is improper and the Court denies the Defendant's motion for reconsideration.

* * *

It is accurate that the Court did not explicitly state the Court granted the Plaintiff's motion and denied the Defendant's motion. It is also accurate the parties stipulated to all of the relevant facts and the Court ordered a

judgment.

The stipulation of the parties was clear as to the probate estate of the descendant [sic] Harry Ward and the receipt of services paid for from the Ohio Medicaid Fund for the benefit of Lessel Ward, spouse of Harry Ward. The stipulation anticipated the recovery for the care of Lessel Ward was recoverable from non-probate assets payable to the Estate of Harry Ward. Therefore, the contemplated action was under R.C. 5126.21(A)(1)(b).

The Court's judgment entry granting judgment to [ODM] was in fact, and the Court so orders, a granting of [ODM's] Summary [J]udgment and a denial of [French's] Summary Judgment. The judgment was granted under the authority of R.C. 5126.21(A)(1)(b).

The entry was stamped "FINAL APPEALABLE ORDER."

{¶ 26} On May 3, 2019, French filed a notice of dismissal of her counterclaim against ODM. French's notice of appeal was filed on May 13, 2019; both the trial court's summary judgment entry and its entry on the motion for revision, clarification, and reconsideration were attached to the notice of appeal.

{¶ 27} On July 10, 2019, ODM filed a motion in this Court to dismiss French's appeal, noting that the trial court's January 18, 2019 entry, "although not labeled as a partial summary judgment, did not address [ODM's] claim to the remaining $988.21 of separate probate assets in Harry's Estate," and did not include language indicating that the entry was a final appealable order or that there was no just reason for delay pursuant to Civ.R. 54(B). Thus, ODM asserted that it was not a final appealable order. French

responded on July 18, 2019.

{¶ 28} On October 15, 2019, this Court issued a decision and entry and an order for briefing. This Court concluded that French's "voluntary dismissal on May 3, 2019 was effective to dismiss all of French's counterclaim(s)," and that under the circumstances, "the motion and order under Civ.R. 41(A)(2) dismissing [ODM's] 'claim to recover $988.21 in probate assets held by [Harry's estate], that were received from the probate estate of [Lessel],' was effective * * *." This Court ordered the parties to brief the issue of whether ODM's remaining claims were moot as a matter of law.

{¶ 29} On December 16, 2019, this Court accepted ODM's representation that the claims at issue were moot as a matter of law, that there was a final appealable order, and that French's appeal should proceed.

{¶ 30} French asserts two assignments of error, which we will consider together. They are as follows:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF FINDING THAT THE [BRC] REFUND IS AN ASSET OF THE RECOVERABLE ESTATE OF LESSEL J. WARD AS DEFINED BY ORC § 5162.21(A)(1)(b) AND NOT GRANTING SUMMARY JUDGMENT TO THE DEFENDANT FINDING THAT THE BRC REFUND IS NOT AN ASSET OF THE RECOVERABLE ESTATE OF LESSEL J. WARD AS DEFINED BY ORC § 5162.21(A)(1)(b).

THE TRIAL COURT ERRED BY NOT FINDING THAT THE DEFENDANT, NINA FRENCH, EXECUTOR OF THE ESTATE OF HARRY L. WARD, WAS ENTITLED TO HAVE THE FACTUAL ISSUES IN THIS

CASE DECIDED BY A JURY, AS THE TRIER OF FACT.

{¶ 31} In her first assignment of error, French asserts that the trial court's judgment was against the manifest weight of the evidence. She asserts that the uncontroverted facts of this case were as follows:

1) The Resident Agreement is a conditional contract in which the condition that would have entitled Lessel J. Ward to half of the BRC refund was never met.

2) The [joint stipulations] confirm the fact that the condition of the Resident Agreement that would have entitled Lessel J. Ward to half of the BRC refund was never met.

3) The affidavit of Carl. C. Eubank confirms that Lessel Ward never had legal title or interest, access to or control of the BRC refund at the time of her death.

4) The plaintiff concedes that "…neither Lessel nor Harry had no [sic] access to, and no ability to exercise control over the Original Deposit during their lifetime."

5) The Ohio case law only permits the ODM to recover from non-probate assets in which the deceased [M]edicaid recipient had legal title or interest during his/her life.

6) The BRC refund is not a non-probate asset, by definition.

Based on these "facts," French contends that there was no evidence from which the trial court could have granted summary judgment in favor of ODM.

{¶ 32} In her second assignment of error, French asserts that a "jury certainly

could find that Lessel had no legal title or interest in the BRC refund at the time of her death" based on the language of the resident agreement, the joint stipulations, the affidavit of Carl C. Eubank, the admissions of ODM, and the case law interpreting R.C. 5162.21(A)(1)(b).

{¶ 33} ODM responds that, pursuant to federal law and Ohio's Medicaid regulations, the original deposit paid to BRC was an "entrance fee" and constituted a "resource" subject to recovery, citing 42 U.S.C. 1396p(g) and Ohio Adm.Code 5160:1-6-02.3(D)(1). ODM asserts that, under the resident agreement, the Wards were able to use the $108,400 to pay for their care (resident agreement § 5.4.), Lessel was eligible for a refund of the deposit when she died or the resident agreement was terminated, and the entrance fee did not confer an ownership interest in the BRC cottage unit; therefore, the original deposit qualified as an entrance fee pursuant to 42 U.S.C. 1396p(g)(2)(A-C) and Ohio Adm.Code 5160:1-6-02.3(D)(3).

{¶ 34} ODM further asserts that, pursuant to the definitions of "estate" and "time of death" within the Medicaid recovery program, Lessel had a recoverable interest in the BRC refund.

{¶ 35} ODM notes that French "suggests" in her brief that the BRC refund was "a contractual obligation." According to ODM, a "contract interest is a chose in action, i.e. intangible personal property, and as such, is part of Lessel's estate subject to recovery under R.C. 5162.21(A)(1)."

{¶ 36} Regarding French's assertion that the trial court erred in determining that the BRC refund was a non-probate asset, ODM asserts in a footnote that Lessel's interest in the BRC refund passed to Harry upon Lessel's death "by an intervivos transaction, i.e.

the Resident Agreement, activated by Lessel's death rather than by way of Lessel's will or intestate succession," and therefore was a non-probate asset as described in R.C. 5162.21(A)(1)(b). According to ODM, the right to receive the BRC refund under the resident agreement, "i.e. the chose in action, that Lessel owned at her 'time of death,'" was Lessel's "contractual right that * * * transcends Lessel's physical death, endures post-mortem, and is subject to posthumous recovery." ODM asserts that the value of Lessel's contract right "at any time after February 1, 2006, was one-half of $48,780.00."

{¶ 37} Regarding forbearance, ODM asserts that, once Lessel's surviving spouse, Harry, died, ODM was entitled and even obligated under the Medicaid recovery program to recover "the value from Harry's estate that was received from Lessel's estate." ODM asserts that its "right and ability to trace asset value" is limited by federal law (42 U.S.C. 1396p(b)) and state law (R.C. 5162.21(A)(1)(b)) to those assets in which Lessel, the deceased Medicaid recipient, "held an interest during the marriage between the Medicaid Recipient and the Recipient's surviving spouse at the Medicaid Recipient's time of death."

{¶ 38} Finally, ODM asserts that it is "axiomatic that an appellate court may not determine the propriety of a trial court's grant of summary judgment by looking to the manifest weight of the evidence."

{¶ 39} Regarding French's second assignment of error, ODM asserts that neither the trial court nor the parties expected or anticipated a trial in this case, because, as the trial court indicated and expressly ordered on at least two occasions, the matter was to be submitted to the trial court for determination. ODM asserts that the trial court's function was to apply the law to the agreed facts as reflected in the joint stipulations.

{¶ 40} In reply, French asserts that neither Lessel nor her estate was ever entitled to the benefits of the contingent/conditional contract pertaining to the BRC refund, that no non-probate transfer language was used in the BRC resident agreement, and that no interest in the BRC refund transferred from Lessel to Harry upon Lessel's death, as there was nothing to transfer.

{¶ 41} After the parties' briefs were filed, French filed a motion to strike the section of ODM's brief in which it asserted that, under federal law and Ohio's Medicaid regulations, the original deposit of $108,400 paid to BRC was an "entrance fee" and accordingly constituted a "resource" subject to recovery. (As noted above, ODM had argued in its motion for summary judgment that the original deposit was comparable to a joint and survivorship bank account, a survivorship tenancy in real estate, and transfer-on-death designations and payable-on-death accounts.) According to French, ODM "waived its right" to argue that the original deposit was an "entrance fee." French further asserts that Medicaid's treatment of an entrance fee to a continuing care retirement community "has nothing to do with estate recovery."

{¶ 42} ODM responds that "[a]lthough the words 'Entrance Fee' may not appear in any of the items to which [French] refers, the concept, theory, and characteristics of an 'Entrance Fee' were certainly included in the [ODM's] Complaint."

{¶ 43} Ohio Adm.Code 5160:1-6-02.3(B)(2) provides: " 'Entrance fee' means a payment generally required for admission to a CCRC[1] or life care community and may vary in amount based on the type of housing accommodations and/or type of care."

{¶ 44} Ohio Adm.Code 5160:1-1-01(B) provides:

---

[1] Continuing care retirement community. *See* Ohio Adm.Code 5160:1-6-02.3(B)(1).

(72) " 'Resources' means cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, has the legal ability to access in order to convert to cash, and is not legally prohibited from using for support and maintenance."

{¶ 45} Ohio Adm.Code 5160:1-6-02.3(D) states:

For purposes of determining or redetermining eligibility for medical assistance on or after February 8, 2006, an individual's entrance fee for admission to a CCRC or life care community shall be considered an available resource to the individual, in accordance with 42 U.S.C. 1396p (as in effect October 1, 2016), when all of the following conditions are met:

(1) The entrance fee can be used to pay for care, under the terms of the entrance contract, when other resources or income of the individual are insufficient; and

(2) The individual is eligible for a refund of any remaining entrance fee when the individual dies or terminates the contract and leaves the CCRC or life care community; and

(3) The entrance fee does not confer an ownership interest in the CCRC or life care community.

{¶ 46} 42 U.S.C. 1396p(g) provides:

(g) Treatment of entrance fees of individuals residing in continuing care retirement communities

(1) In general

For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, the rules specified in paragraph (2) shall apply to individuals residing in continuing care retirement communities or life care communities that collect an entrance fee on admission from such individuals.

(2) Treatment of entrance fee

For purposes of this subsection, an individual's entrance fee in a continuing care retirement community or life care community shall be considered a resource available to the individual to the extent that--

(A) the individual has the ability to use the entrance fee, or the contract provides that the entrance fee may be used, to pay for care should other resources or income of the individual be insufficient to pay for such care;

(B) the individual is eligible for a refund of any remaining entrance fee when the individual dies or terminates the continuing care retirement community or life care community contract and leaves the community; and

(C) the entrance fee does not confer an ownership interest in the continuing care retirement community or life care community.

{¶ 47} As this Court has noted:

* * * "It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed." *State v. Schneider*, 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995), citing *State v. Coleman*,

37 Ohio St.3d 286, 294, 525 N.E.2d 792 (1988). (Other citation omitted.) *Tax Ease Ohio LLC v. Lucas*, 2d Dist. Montgomery No. 27836, 2018-Ohio-3075, ¶ 6.

**{¶ 48}** Nevertheless, we overrule the motion to strike as it is not dispositive of our resolution of the issues herein. We note that French acknowledges in her motion to strike that the "assets of a deceased Medicaid recipient that [ODM] *may recover against are succinctly and specifically set forth in R.C. 5162.21(A)(1)(a)-(b).*" (Emphasis added.) We conclude, as set forth in ODM's brief and for the reasons set forth below, that ODM was entitled to summary judgment as a matter of law even in the absence of ODM's characterization of the $108,400 as an "entrance fee."

**{¶ 49}** Regarding summary judgment, as this Court has determined:

Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996).

Once the moving party satisfies its burden, the nonmoving party may

not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* The non-moving party has the burden "to produce evidence on any issue for which that party bears the burden of production at trial" and may not rest upon unsworn or unsupported allegations in the pleadings. *Parker v. Bank One, N.A.*, 2d Dist. Montgomery No. 18573, 2001 WL 303284, * 3, citing *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993),*Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 111, 570 N.E.2d 1095 (1991), and others. Throughout, the evidence must be construed in favor of the nonmoving party. *Dresher* at 293, 662 N.E.2d 264.

*Heard v. Dayton View Commons Homes*, 2018-Ohio-606, 106 N.E.3d 327, ¶ 7-9.

{¶ 50} " 'Medicaid' and the 'medicaid program' mean the program of medical assistance established by Title XIX of the 'Social Security Act,' 42 U.S.C. 1396 et seq., including any medical assistance provided under the Medicaid state plan or a federal Medicaid waiver granted by the United States secretary of health and human services." R.C. 5162.01(A)(1). The "department of medicaid shall act as the single state agency to supervise the administration of the medicaid program." R.C. 5162.03.

{¶ 51} R.C. 5162.21 provides the statutory mandate for Ohio's Medicaid Estate Recovery Program and provides:

* * *

(B) To the extent permitted by federal law, the department of medicaid shall institute a medicaid estate recovery program under which the department shall, except as provided in divisions (C) and (E) of this section, and subject to division (D) of this section, do all of the following:

\* \* \*

(2) For the costs of medicaid services the medicaid program correctly paid or will pay on behalf of an individual fifty-five years of age or older who is not a permanently institutionalized individual, seek adjustment or recovery from the individual's estate;

\* \* \*

*See also* Ohio Adm.Code 5160:1-2-07(C)(2).

{¶ 52} Pursuant to federal law, namely 42 U.S.C. 1396p(b)(2), recovery "may be made only after the death of the individual's surviving spouse \* \* \*."  R.C. 5162.21(C)(1) also provides: "No adjustment or recovery may be made under \* \* \* division (B)(2) \* \* \* of this section from an individual's estate while either of the following are alive: (a) The spouse of the \* \* \* individual."  *See also* Ohio Adm.Code 5106:1-2-07(D)(1).

{¶ 53} As noted by the Ninth District in *Ohio Dept. of Job and Family Servs. v. Tulz,* 152 Ohio App.3d 405, 2003-Ohio-1597, 787 N.E.2d 1262:

"[B]ecause both federal and state law allow recovery only after the death of an individual's surviving spouse, dual interests are served.  One policy prevents the impoverishment of the surviving spouse during his or her lifetime.  Once that spouse dies and the need for protection from impoverishment ceases, allowing a state to recover medical assistance

benefits previously paid furthers the broader purpose of funding future services to the medically needy. These policies are both served by allowing the state to recover medical assistance benefits paid to or on behalf of a predeceased spouse from a surviving spouse's estate, to the extent the assets contained in that estate were jointly owned by the couple during their marriage." * * *

*Id.* at ¶ 15, quoting *In re Estate of Jobe*, 590 N.W.2d 162, 166 (Minn.App.1999).

{¶ 54} "Initially, Ohio's Medicaid Estate Recovery Program permitted recoupment solely from assets within the decedent's probate estate." *Phillips*, 2016-Ohio-2994, 55 N.E.3d 20, at ¶ 10. In 2005, "Ohio * * * elected to implement the broader definition of 'estate' to include non-probate assets. * * * In fact, 'Ohio's laws on recovery of estate assets for Medicaid reimbursement are among the most aggressive in the county.' " *Admr., State Medicaid Estate Recovery Program v. Miracle*, 2015-Ohio-1516, 31 N.E.3d 658, ¶ 11 (4th Dist.), quoting *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 26.

{¶ 55} R.C. 5162.21(A)(1) defines "[e]state" as follows:

(a) All real and personal property and other asserts to be administered under Title XXI of the Revised Code and property that would be administered under that title if not for section 2113.03 or 2113.031 of the Revised Code;

(b) Any other real and personal property and other assets in which an individual had any legal title or interest at the time of death (to the extent of the interest), including assets conveyed to a survivor, heir, or assign of

the individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

*See also* Ohio Adm.Code 5160:1-2-07(B)(1)(a)-(b).

**{¶ 56}** In an effort to further supplant the common law principle of divestiture of certain interests upon death, R.C. 5162.21(A)(5) provides: " 'Time of death' shall not be construed to mean a time after which a legal title or interest in real or personal property or other asset may pass by survivorship or other operation of law due to the death of the decedent or terminate by reason of the decedent's death."   *See Phillips* at ¶ 13. "Patently, by implementing the 2005 amendments, the General Assembly exhibited its intent to circumvent [that] longstanding tenant of common law * * *."   *Phillips* at ¶ 14. "Indeed, the inclusion of the nebulous phrase 'or other arrangements' at the close of [R.C. 5162.21(A)(1)(b)[2]] suggests the legislature's resolve to vitiate any asylum previously accorded nonprobate assets in the face of Medicaid recovery. * * *."   *Id.*

**{¶ 57}** In *Phillips,* the State sought to recover Medicaid benefits paid to the decedent by means of a lien on property the decedent held as a life estate, and the decedent's remaindermen daughters brought a quiet title action against the state.   Citing *Miracle*, 2015-Ohio-1516, 31 N.E.3d 658, the Twelfth District determined as follows:

> * * * [W]ithin the confines of Ohio's Medicaid Estate Recovery Program, a life estate interest held by a Medicaid Recipient does not extinguish upon his or her death.   Rather, for purposes of Medicaid recovery, a life estate interest endures post mortem and represents a

---

[2] R.C. 5162.21 is herein substituted for R.C. 5111.11, which initially governed the estate recovery plan and has been repealed.

quantifiable asset which the state may encumber by virtue of a properly filed lien. In the absence of a probate estate, the state may seek recovery of Medicaid benefits from third parties to whom qualifying assets have passed. Ohio Adm. Code 5101:1-38-10(E)(2)(a).

*Phillips* at ¶ 18.

{¶ 58} The parties stipulated that Lessel died on July 7, 2015, and that on that date she was over 55 years of age and married to Harry. The parties stipulated that during Lessel's lifetime, she "received medical services under the Medicaid program beginning February 1, 2011" until her death. The parties further stipulated that ODM "correctly paid for medicaid services" under the Medicaid program for, and on behalf of, Lessel in the amount of $268,385.68.

{¶ 59} The parties further stipulated that, on January 26, 2016, ODM presented a claim to Harry as Lessel's surviving spouse and the person responsible for her estate and also filed its claim in Lessel's probate estate. The parties stipulated that ODM's "[c]laim against Lessel's Probate Estate is valid and is able to be recovered against Lessel's Recoverable Estate as described in R.C. 5162.21(A)(1) and [Ohio Adm.Code] 5160[:]1-2-07 * * *."

{¶ 60} The parties also stipulated:

22. In accordance with [ODM's] statutorily required forbearance from recovering its Claim against Lessel's Recoverable Estate while Lessel's Surviving Spouse, Harry, was alive, on January 26, 2016, the Department filed its Notice in Lessel's Probate Estate proceedings in the Probate Court indicating that upon the death of * * * Harry, [ODM] may seek

recovery of its Claim against those assets in Harry's Estate. * * *

23. The only asset listed, and the only asset administered, in Lessel's Probate Estate was a checking account that Lessel owned at the time of her death at Second National Bank in the amount of Nine Hundred Eighty-eight and 21/100 Dollars ($988.21).

24. After payment of the costs of administration of Lessel's Probate Estate, the remaining amount of Lessel's Probate Estate distributed to * * * Harry, was $408.21.

{¶ 61} The parties stipulated that Lessel and Harry, pursuant to the March 21, 2001 reservation agreement, paid a unit reservation fee of $2,000, and that the fee was refundable if the cost of the chosen unit, as determined by BRC, exceeded $108,400. The joint stipulations provided that Lessel and Harry entered into the resident agreement and paid BRC $108,400 pursuant thereto.

{¶ 62} The joint stipulations provided that, pursuant to the resident agreement, Lessel and Harry had certain rights in their lump sum payment upon termination of the agreement. The resident agreement provided in relevant part:

1.1 BRC will permit Residents to occupy cottage 856 in Chestnut Village. Residents do not receive an interest in the real estate and the right to occupy the cottage is subject to Section Two.

* * *

5.3 This agreement may be terminated by Residents upon any of the following:

* * *

5.3.2 The death of both Residents.

5.4 Rights of Residents on Termination

Upon termination, the amount of the original deposit less any cost of refurbishing the unit for any damage beyond the normal wear and tear of Residents' occupancy and by any amounts owed for the care of either of the two Residents, shall be returned to Residents, the Surviving Resident or to the Survivor's Estate.

**{¶ 63}** The parties stipulated that Harry died on March 14, 2016, and that on April 18, 2016, Harry's will was admitted to probate. They also stipulated that Harry and Lessel's two daughters were the beneficiaries of his will; that French filed her inventory and appraisal with a schedule of assets in Harry's probate estate, indicating a total value of $51,280; that the inventory included a refund pursuant to paragraph 5.4 of the resident agreement in the amount of $48,780; and that on January 23, 2017, ODM "timely filed its Claim in connection with medicaid services [ODM] had properly paid for on behalf of Lessel," together with accrued interest. The parties stipulated that Harry was not a recipient of Medicaid services during his lifetime, and ODM did not have a claim against Harry's estate. On January 25, 2017, ODM presented its claim to French.

**{¶ 64}** The stipulations provide that French "offered the amount of $408.21, which was the amount distributed from Lessel's estate to Harry, "as full payment and satisfaction of [ODM's] valid claim in the amount of $269,929.82" and that, at Lessel's death, the resident agreement did not terminate, as Harry continued to reside in the cottage unit; the resident agreement terminated upon Harry's death.

**{¶ 65}** We initially note that the trial court's determination that Lessel "had an

interest in and access to a refund at the time she sought Medicaid benefits" was not supported by the record. As noted above, Lessel began receiving benefits on February 1, 2011, and she and Harry deposited the $108,400 in 2001.

**{¶ 66}** Construing the evidence most strongly in favor of French, however, ODM was entitled to judgment as a matter of law, having established that no genuine issue of material fact remained to be litigated. Eubank averred in his initial affidavit, paragraph 28, that "the Wards owned a fully paid Resident Agreement," and that they were entitled to a refund of $48,780 (45% of the original deposit). As this Court noted in *Weisenmayer v. Vaspory*, 2019-Ohio-1805, 135 N.E.2d 1237, ¶ 13 (2d Dist.), "by definition, the estate recovery program contemplates the recovery of Medicaid costs from the assets of deceased recipients." We conclude that, consistent with the analysis of the lien against the life estate interest in *Phillips*, and further consistent with the expanded definition of "estate" in R.C. 5162.21(A)(1)(b) to include non-probate assets, as well as the definition of "time of death" in R.C. 5162.21(A)(5), Lessel's ownership interest in her half of the BRC refund endured post-mortem and represented a quantifiable non-probate asset which ODM was entitled to recover for Medicaid medical assistance benefits previously paid on Lessel's behalf, by means of a properly filed claim for estate recovery. *See* R.C. 2117.061(D). In other words, Lessel's interest was not extinguished by her death, and half of the BRC refund was a non-probate asset in which Lessel had a legal interest when she died; that interest was conveyed to Harry and subject to recovery from his estate in the amount of $24,390.

**{¶ 67}** French's assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Stanley R. Evans
Justin M. Lopez
Craig A. Dynes
Hon. Martin D. Burchfield, Visiting Judge